Mr. Harper for the affidavit, Mr. Wynne for the affidavit. Mr. Harper, good morning. Good morning, Your Honors. May it please the Court. Nick Harper for Jesse Benton. Mr. Benton's campaign finance convictions in this case were tainted by multiple independent legal errors. The government obtained FECA convictions based on the erroneous legal theory that Mr. Benton intended to influence an election, a theory the government has now abandoned on appeal. The government also was permitted to use Mr. Benton's prior conviction as pure propensity evidence based on a limiting instruction that the government has to rewrite to try to defend in this Court. And the government secured Sarbanes-Oxley convictions based on election reporting conduct that the statute simply does not reach. As the District Court recognized, this was a close case. The jury deliberated for almost two and a half days. The errors here easily could have changed the outcome. Let me ask you about that, because my clerk and I couldn't find in the record. That's a long time for the jury to deliberate. Did they ask for any recharge? Did they ask for any explanation? Not as far as I'm aware, Your Honor, but I think the fact that they deliberated for so long suggests that there were serious factual disputes at issue. And this goes to the first issue I'd like to talk about today, which is the FECA instructions. I think they were defective for failing to include an essential element of the offense. And that very well could have been what the jury was deliberating about for so long. So the government ---- Kagan. Kagan. Kagan. Can you address how that's preserved? Because it seems to me that you agreed and cosponsored the instruction that you're  So why should we even entertain this argument? Of course, Your Honor. So we preserved this argument at the motion-to-dismiss stage. We argued that the indictment was defective because it failed to include an essential element of the offense, Vasilenko's purpose to influence a Federal election. The government argued ---- So in order to preserve it at that stage, the district court would have had to definitively rule against you, but it doesn't seem that it did that. So I think the district court did definitively rule, and necessarily definitively ruled against us, because the indictment must contain all the elements of the offense in sufficient detail to apprise the defendant of the elements of the charge. And the district court rejected our argument at the motion-to-dismiss stage. It instead adopted the government's argument that whose purpose matters was a fact question that could be resolved by the jury. And the district court said, you know, you can defer these arguments to your case in chief. That's at JA94. Right. So I think ---- I'm sorry. I just want to complete that thought, because I thought he said I'm ---- there's no prejudice to you raising this later. He's only ---- he was only granting it at this stage, and you could raise it later. Right. There was no prejudice to making these arguments about whose purpose matters to the jury. But the jury needed to be told as a matter of law whose purpose is required to be shown in order to convict. And the jury was not told that. The jury was instead told by the government that ---- But then how did he rule definitively against you so that you were relieved of your obligation to raise this again if he told you it was without prejudice to you raising it again? He ruled definitively against us on the question of whether this ---- Vasilenko's purpose was an element of the charge. He necessarily did, because had it been an element of the charge, he would have had to dismiss the indictment, but he didn't do so. Instead, he said this question of whose purpose matters is not an element. It's a fact question that the jury can resolve. But what's the difference, though, between it being an element of the charge and it being required to be proved? I'm confused as to the distinction you're drawing. So the jury needed to be told specifically that Vasilenko ---- that the government needs to prove that Roman Vasilenko, foreign national, intended to influence an election when he made this payment. And the jury was never told that. Instead, the jury was told in the language of the statute that government has conceded is unclear, that basically any purpose ----  I understand your argument. I'm just trying to drill down on the issue preservation issue. And your claim is that the jury was supposed to be instructed on this, and you didn't have to raise it because the Court previously ruled that they didn't have to be instructed on this, but that doesn't seem to be supported by the record because the district court didn't definitively rule. It just said you can raise this later, but for now, I'm denying the motion to dismiss. So I don't see why you're relieved of your obligation to contemporaneously object at the time that the jury instructions are submitted. You agreed to the jury instructions that were given, and now you're challenging the same jury instructions that you cosponsored. So I don't think that the district court was saying you can raise arguments about whether Vasilenko's purpose is an element of the offense, again, at the jury instruction stage. The district court rejected that argument. He said the indictment contains all the elements of the offense, and our position is that neither the indictment nor the jury instructions did. So he we could not have But if it's not completely clear, then you lose, correct? No, I don't think that's right. I think, first of all, I think it is completely clear. I mean, you can read it. I think it's JA 92 to 94. The district court says this indictment contains all the elements of the offense, and our fundamental submission is that neither it nor the jury instructions, which both have to have the elements, had all the elements. It did not say that the government needed to prove Vasilenko's purpose. So an indictment often doesn't have all the elements of the offense. So an indictment does need to have all the elements of the offense. And the Supreme Court, going back a century, has said it not only needs to contain the statute, what the statute says, it needs to descend to the particulars. It needs to provide unambiguous instruction. So, I mean, I've read a lot of indictments in my time. Sometimes they say the defendant violated this statute, period. It does not have to have all the elements of the offense in an indictment. Well, what's your authority for that every indictment has to have every element of the offense? I mean, going back to Crookshank and, you know, that's in the 1800s, the Supreme Court's decision in United States v. Russell, for example, says this specifically, and I can pull out the quote for you on rebuttal. I don't have it for me right now. But the Supreme Court has said that, you know, merely parroting statutory language is not enough to necessarily to make the indictment sufficient. It has to say the element is an unambiguous, clear term to send to the particulars where necessary. And here we think it was necessary, because what happened was the jury was not told whose purpose mattered under the statute. We think it clearly was Vasilenko's purpose. And because of that, the government was able to argue at closing that Mr. Benton's purpose mattered over and over. And I think that seriously prejudiced Mr. Benton and created a serious probability that the jury convicted based on Mr. Benton's purpose. And to be clear, the government is saying now that that purpose is irrelevant. It was irrelevant all along. And so, you know, I think it's quite unfair for the government to be able to urge that theory before the jury at closing and then on appeal say, you know, that that was completely irrelevant all along. Just one other thing on the invited error issue. So I think as you've set out, the requirement would be that the district court definitively ruled on this. And I just wondered if you'd address on JA93, the judge says the indictment need not define down the statutory terms of contribution and solicitation for it to be sufficient. Now, regardless of what the right approach is, isn't that him sort of explicitly saying I'm not going to get into what the elements of a contribution are? Well, I think that is him rejecting our argument. He's saying the indictment doesn't need to contain the element you were saying it needs to contain. It does not need to define down the statutory term contribution. And right now, you're raising an issue about what specifically a contribution is. Right. I think that is my point, that our position is that contribution is defined to mean, you know, any payment for the purpose of an election. That was our argument. That was an element. It needs to be in the indictment. District court said, no, it doesn't. That's not an element that needs to be in the indictment. And so, you know, of course, your right doesn't need to be in the jury instructions either. And we didn't need to re-raise that argument at the jury instructions stage. In the, you know, little bit of time that I have left, I would like to turn to the specific general argument that we made. I think that's an independent basis for vacating the section 1519 counts. And I do think that this is a paradigmatic case for the application of the specific general rule. You have every, you know, this is an ancient principle of statutory and contract interpretation. You have two statutes here that trigger every factor that the Supreme Court has recognized as triggering the specific general rule. So you have the massive gap between the specificity of FECA and the generality of section 1519. FECA applies specifically to election reporting, creates a comprehensive scheme for punishing it. Some criminal, some civil punishments, depending on how much is at issue. It imposes a willfulness requirement. It imposes procedural requirements on the government. Section 1519 passed in the wake of an accounting scandal says nothing about elections whatsoever. It applies to a broad range of document falsification and destruction. So why isn't this argument governed by Batchelder? So the general rule is in criminal cases, you can charge any crime where the elements are met by the facts that are presented. So I think Batchelder doesn't speak to this at all because Batchelder held as a constitutional matter when statutes do overlap, the government has constitutional authority to prosecute under either statute. And we take no issue with that. What we're saying is that the threshold question is whether two statutes overlap. And that question Batchelder did not address, had no opportunity to address because the statutes in that case involved identical conduct, felons receiving firearms. No one briefed the specific general rule. The Court had no opportunity to address it and did not address it. So we're arguing about the threshold question. Do the statutes overlap? And we think that is governed by the specific general rule. But the government routinely charges overlapping statutes. Like, it's just done all the time, and generally it's permissible. I guess people cite Batchelder. So what you're proposing is extremely novel. So I think that is we don't take issue with the proposition that the government generally can prosecute overlapping statutes. But I think what we're saying is this is a very unique context in which you have a specific, comprehensive regime designed to govern election-related misconduct. And then you have a sweeping, broad provision that is, you know, was designed to, you know, was enacted in the wake of an accounting scandal. And we think in those situations where you have such a massive gap, and it's not only the gap between the specificity and generality of the statutes, it's that they completely overlap in this context. Every single criminal violation of FECA, willful false report to the FECA. It's just that the government routinely does this. For example, you know, there are all these gun offenses, carrying a pistol without a license, unauthorized whatever, possessing unregistered firearms. There are tons of charges that are often brought in conjunction with each other that very much overlap. And why can't they do that? They do it all the time. We think they can do that. We just don't think that these same factors are going to be present here. There's not going to be the same specificity and generality difference between the two statutes that are overlapping. And there's not going to be the complete overlap problem that you have when, you know, every single criminal violation of FECA is — So let's go to the authority that you would rely on to say that the government can't do this, because I understand that you're saying one is specific and one is more general, but why can't they do that? It seems to me that you've relied on some cases that deal with sentencing enhancements, which is very different from charging decisions. Because for a sentencing enhancement, you have a set of facts. You're charging decisions are often aggregated, overlapping, numerous charges that overlap. So I don't think that the cases you cite that cite sentencing enhancements are supportive. And then you cite cases that — where there's sort of specific language in a statute that says you can charge one or not the other. So what is your authority for the idea that the government can't charge specific and general crimes in the same indictment? So we think that Busick and Simpson, which is the case I think you were referring to as being about sentencing enhancements, you know, apply beyond sentencing enhancements to overlapping criminal statutes. This is a cross-cutting canon of interpretation. We don't think it's limited sentencing enhancements. And in Busick and Simpson, the Court said it has special application in the criminal context. So why would the same application be relevant in both a sentencing enhancement versus a charging decision? Because as I mentioned, in sentencing, you have one set of facts. You're deciding which enhancement should we apply. It's one or the other. Whereas in charging, it's often aggregated. So the Supreme Court — the reason the Supreme Court said that this canon of construction has such force in the criminal context is because of fair notice and lenity concerns. And I think those are even more, you know, heightened when you're dealing with a substantive prohibition rather than a sentencing enhancement. And I do think there's also — the Second Circuit's decision in Laporta is directly on point here, where the — that — in that case, there was a statute that specifically prohibited the use of fire to destroy government property, and then a broader statute with — that had heightened mandatory minimums that prohibited the use of fire to — to commit any felony, including the destruction of government property. The Second Circuit there held that because those statutes completely overlap, and applying the broader statute would render the specific statute a practical nullity when the destruction of government property with fire is at issue, the government has to proceed under the narrower statute. And I think this is exactly the same case. And I think this Court read an opinion that is very narrow. So I think one — one material — potentially material difference between Laporta and just cases more generally applying this canon, like Radlax, is that in Laporta, those were two provisions of the same statute enacted at the same time. Here, we've got FICA in the early 1970s, and 30 years later, a more general statute enacted. Or is there any case with that kind of difference? A gap in time and totally distinct statutory scheme that applies the specific versus general canon in the way you'd like us to? So I'm not aware of a specific case with that fact pattern, but I think it actually helps us because the Supreme Court has recognized that when you have a specific comprehensive regime that's been around and guided the public for many years, as FICA's did for 30 years, for the enactment of Section 1519, courts should be reluctant to ascribe to Congress the intent to derogate from or interfere with that scheme through a later general enactment. So I think that actually enhances the application of the specific general rule here as compared to one where it's in the same statute. So I think in Simpson and Busick, right, the Court pointed to evidence in the later enacted statute — it was legislative history, but that's what the Court relied on — that explicitly said, if there's already a statute out there enhancing the penalty for a firearm-involved offense, we're not intending to displace that. So that's a — that would be the equivalent of when Section 1519 is passed, Congress is saying, we don't want to displace a statute like FICA. And my understanding is there's nothing equivalent to that here. Is that right? There's no language like that here, but I don't think the Supreme Court's cases require that language. Certainly, Busick and Simpson didn't say such language was required, and the Supreme Court, in its specific general rule cases more broadly, hasn't said that. I think here, because of all the factors I mentioned, this is a case where you can tell from the context and from the text of the statute that they were not meant to overlap. If the government can prosecute Section 1519 in every one of these cases and get 20 years max, it's going to do that in every case, and this case shows you why. But this is what — I think this is what the combination of the distance in time and the breadth of — and what is going on in Sarbanes-Oxley might be a problem for you, right? So what happens is, for specific reasons, Congress enacts a new, broad statute with heightened penalties for all government false reporting crimes. And it just seems pretty logical that if that does happen to supersede FICA in this particular area, that Congress wouldn't have been bothered by that. I think that — I disagree, Your Honor. I think it's hard to imagine that Congress, in reacting to an accounting scandal, was — wouldn't have been bothered by the fact that its statute was going to make FICA's very finely reticulated enforcement scheme a practical nullity. I think that is — that's what the Supreme Court's decision in Williams says. I think that's just the logical inference from the context. And I do think there is a real concern here. This case, the government could have gotten max penalties under FICA. It could have gotten up to five years for this violation. And it proceeded under Section 1519. I think it's very clear why. Because it's easier — as the government set its own prosecutorial manuals, it's easier to prosecute under Section 1519, and they can get more penalties. I wanted to ask you about what I think is the strongest error. And unfortunately, I know you weren't the trial counsel. You can't unring the bell. But this instruction 2.321 about 404B, it sounds to me — and that's why I asked you if the jury wanted any instructions. It's almost — to me, almost incomprehensible, particularly in view of the fact that they knew he had committed that previous crime. So do you see any way — I mean, it's — we've got — it's either invited error or plain error. Do you see any way — any way we can reach the substance of this charge? Absolutely, Your Honor. First of all, I think we did preserve this argument because the — ultimately, the issue is whether the district court properly admitted this prior conviction to prove identity, which was not an issue in the case. And I think it — we opposed the government's motion to eliminate on those very grounds in the district court, and the district court overruled our objection. Now, this instruction was simply a form identity instruction. It was the D.C. — if you look at the D.C. format, modus operandi identity instructions, it was a form instruction. So we couldn't have objected to the specific instruction without sort of relitigating our opposition to the government's admission of the prior conviction for identity purposes. So we preserved our — our objection to this instruction through our objection to the admission of the underlying conviction for this purpose. I don't see why you couldn't have lodged an objection to this charge. So certainly, we could have lodged an objection, but we had no obligation to, because this Court has been clear that when the district court definitively resolves an issue pretrial, then it — it is preserved at the jury instruction stage. That's what this Court said in Wilson, in other cases as well. But I think even if you thought plain error review applied to that question, then I think we still should win on this, because the government isn't even defending this as an identity instruction, which it clearly was. And it — and it directed the jury to engage in pure propensity reasoning had seriously prejudicial consequences for our — my client, which, as I meant — as Your Honor mentioned, the jury deliberated for a long time. There were clearly close issues, and this could have tipped the balance. Just back to preservation on this issue, there's certainly a definitive ruling that the conviction can come in for willfulness and mens rea. And then is the statement you're relying on for there being a definitive ruling that it can be used for MO purposes, the statement on 110 where it says, I think it also probably shows a certain MO in the use of false invoices in both cases, is that the ruling or is there something else? That's correct, Your Honor. The government made this argument about MO, and the district court, you know, said in its motion-to-dismiss ruling that this can come in for MO purposes. And so we think that was a definitive ruling on that. But I just — I guess the obvious problem is it says probably, and it's sort of after pages of analysis on the other reasons it can come in. So how would you encourage us to view that as a definitive ruling as opposed to — Well, I think — I think the district court, you know, adopted the government's reasoning on that question. It went through the government's reasoning about why this comes in, because it's sort of a signature crime, and it adopted that. And then the parties proceeded on that assumption throughout the rest of the litigation. I think it was pretty clear. And I think if you look at the district court's post-trial ruling, I believe the district court addressed this again and said that it had already determined this, you know, was admissible for MO purposes. Thank you. I have one other question that is not in the record, I don't think. The amount of money was $100,000, and Mr. Benton gave the Republican Party, whatever the committee was, $25,000. Whatever happened to the $75,000? So it's not in the record as far as I know, but I — you know, I don't know exactly what happened with that money. It's possible that he kept it or he did something else that I don't know. I'm sorry. Okay. We'll give you a couple minutes in reply. Thank you. Mr. Wynn. Good morning, Your Honors, and may it please the Court. Connor Wynn for the United States. There's a good bit of ground to potentially cover in this appeal, so I currently intend to talk about the preservation issues that have been discussed so far, the FICA issues, the Rule 404B limiting instruction, and Section 1519. But if there's anything in particular that this Court would like me to talk about, I'm happy to take those questions as they come. So I think picking up on the themes of what we just heard, Mr. Benton in this case is proposing a number of novel arguments about when particular arguments are preserved below, and also about prosecutorial discretion. He pushes the — he pushes the boundaries on both fronts. They're novel, and they're wrong. I'll start with the FICA contribution issues. Now, Mr. Benton did not preserve his objection to the FICA contribution jury instructions in this case, which he himself preserved — which he himself proposed. Indeed, his claim is waived on that front. If you take his preservation argument to its fullest extent, then any time the district court denies a motion to dismiss based on a legal ruling, then the  In fact, Federal Rule of Criminal Procedure 30 exists specifically to inform the parties that they have an obligation to object to jury instructions when it comes time for the charging conference. But even if, in some circumstances, a district court's pretrial ruling could definitively resolve the issue and leave a defendant of his objection to rule, that would not be this case here. As the Court's already discussed with Mr. Benton's counsel, the district court specifically said that it was denying his arguments without prejudice to his ability to re-raise them during his case in chief. Mr. Benton never did so. Instead, he joined the government in proposing the jury instructions that governed the FICA counts in this case, and then, over the government's objections, secured a defense theory of the case instruction that allowed him to make all of the arguments that he wanted to make before this jury. In fact, Mr. Benton's counsel acknowledged as much in his closing argument. Specifically, in docket number 94, you can see that Mr. Benton is making Mr. Benton's counsel use himself to have received all the instructions he could possibly want at this point. The claim is waived. At the very least, it's on plain air. And whatever else might be said about the merits of Mr. Benton's novel and innovative readings of FICA and the contribution definition, there's no plain, clear, and obvious error in the statutory interpretation that was adopted here, and that eventually formed the basis for these jury instructions. That claim fails. If the Court has any specific questions about the merits of the FICA contribution issue, I'm happy to talk about them, but otherwise think it makes sense to move next to Section 1519. Okay. Then, in that case, moving to Section 1519, on this front, Mr. Benton seeks to upend traditional principles of prosecutorial discretion. He would have this Court announce a novel ruling that the government cannot charge amongst overlapping statutes any time that it appears that multiple statutes could apply. Now, granted, in this case, FICA is a complex statute, and its false reporting crime does focus specifically on false material statements made in the context of campaign finance. But the fact that there is a comprehensive statute of that kind has never been a ground for displacing the government's ability to bring charges under other applicable to it. I think his argument is that the unique thing happening here is that they're not just overlapping, but that your reading of 1519 renders FICA's provisions entirely superfluous. The government's never going to choose to charge under FICA. Is that — and that's essentially the government's announced position, right? Your Honor, I don't think that that is, in fact, correct. And let me give a couple of reasons for why that is, and then also a couple of examples of cases where the government has, in fact, pursued false reporting charges as opposed to charges under 1519, since that section's enacted. So, first, as to the principles, I think what's important to remember here is that the FICA false reporting crime statute contains different mens rea requirements than does a Section 1519 charge, specifically to prove that a defendant created a false statement under FICA. The defendant is going to have to knowingly and willfully have created that false statement and had it submitted to the FEC. That is different than Section 1519, which — in which a defendant must act knowingly but also have a specific obstructive intent. And that mens rea that's present in 1519 is not present in FICA. So in this case, for example, what — what — did you use additional evidence to show there was a specific intent to obstruct FEC operations than simply showing he created a false record and submitted it? Your Honor, I do think that that's what our evidence is in the record. Specifically, you can look at page J.A. — I'm going to have to find the exact citation for you — but you can look at page J.A. 323. I believe it's 323. It's an email where Mr. Benton's co-conspirator and Mr. Vassilenko's translator are communicating about the size of the donation to be made by Mr. Benton. And — excuse me, Your Honor, it's J.A. 319, not 323 — J.A. 319. And in that email, Mr. Vassilenko's translator informs Mr. Weed that Mr. Vassilenko is ready and wire — ready and happy to make his donation. In response, Mr. Vassilen — Mr. Benton's co-conspirator, Douglas Weed, then responds that we're going to have to handle this, quote-unquote, correctly. And that is because both Mr. Weed and Mr. Benton are familiar with the intricacies of FECA and campaign finance law. They understand that if Mr. Vassilenko makes a contribution to a federal political election and political committee, such as the RNC, that is going to be illegal. And if they are caught doing that, they are going to be subject to criminal charges under FECA. Therefore, they need to handle the donation correctly. They need to disguise it. They need to obstruct the FEC's reporting machine. That's the only way they can get away with crimes. Okay. So I appreciate this argument. And then assume for the moment that we think that your position basically renders FECA superfluous. I assume you still have an argument that that's just fine. And I wondered if you might, you know, spell out the reasons for that. Certainly, Your Honor. So even if this, even if Section 1519 could arguably render FECA analogous, superfluous, I think this Court has already explained in the Shaw decision that that alone wouldn't necessarily be enough to render FECA a dead letter, or vice versa, any statute. So Shaw is a little bit different from this case in the sense that it's dealing with Section 1001, the material false statements charge, which was enacted long before FECA. But then once FECA's false reporting charge is introduced into the Federal Code, a defendant raises an argument that I can no longer be charged under Section 1001. Because if that was the case, FECA's false reporting crime would have no work to do. Once again, the penalties under Section 1001 are more significant than in FECA, and arguably it requires a lower mens rea than does FECA. It's an easier charge to prove. This Court said no problem in Shaw. The government may continue to prosecute defendants under either Section 1001 or FECA as it sees fit, core principles of prosecutorial discretion. So, Your Honor, I guess what I would say in response to your question at the bottom line is, if this Court thought that the government would always charge 1519, which is not true, to be clear, and I would reference this Court's attention to United States v. Smuckler from the Third Circuit, I'm happy to give you a citation to that. It's 991 F.3d.472, and you can look at Note 6. There we charged a false statement crime under FECA and not 1519, even though when you go look through the district court filings, you can actually see that 1519 was under investigation. So there are situations where the government is going to charge the one or the other. Could the judgment charge both? Certainly. The government could charge both. It frequently does charge overlapping crimes. So you've actually been quite restrained here in only charging one? I mean, I think one could say that. You know, frequently the government charges both crimes, recognizing that when they contain different elements, as here, juries might reach contrary factual determinations as to the men's right at present. But that's the government's prerogative. And then if a jury finds a defendant guilty on one or both crimes, it goes to sentencing, where an Article III judge will sit down and determine what sentence should be run on those counts concurrently, consecutively, within the traditional discretion of the Court. That is how our system has worked for hundreds of years. This case should not be the one to suddenly displace that system. If the Court has no further questions on 1519, I do want to talk briefly about the Rule 404B limiting instruction that Judge Henderson raised. Once again, Mr. Benton's argument on this front is unpreserved. Now, a moment ago during oral argument, he claimed that his objection in a pretrial motion in limine preserved his objection to a limiting instruction. Once again, that's not correct. Even if the district court's ruling on the Rule 404B substantive issue could be understood as definitive, and this was going to come in for modus operandi, which I want to be clear is not a catch, is not necessarily the same as identity. When evidence is admitted for modus operandi, that's a way of saying that someone has a pattern of doing things. And that can show their intent, their willfulness, their knowledge, what have you, sometimes identity. But it's not a catch-all. It's not identity, pure and simple. But, Your Honor, I see my time has expired. Well, I just want to ask you. Yes, please. I won't beat a dead horse, but that first alternative, the jury was told the circumstances of the other crimes and charged offenses are so similar that it is likely that the person who committed the offenses also committed the offenses as charged in the indictment. That, to me, I would think a lager or say if he did the first one, he did this one. So, Your Honor, a couple of courses in admissible or in legal. Your Honor, if we were just taking that portion of the instruction and it were understood to reference identity, if that alone was in front of this Court, maybe that would be a cause for concern. But what's important to understand in the Rule 404B context is that the Court then went ahead and gave the traditional no propensity evidence instructions alongside that portion of the Rule 404B. And we have to read this instruction as a whole, as this Court's precedent in the United States v. McGill teaches. We're not parsing jury instructions, individual sentences, and excerpting them from the entirety. So you have the district court saying you cannot use this evidence for propensity purposes. So at the very most, Your Honor, I think in the most unfavorable light to the government, what this instruction allowed the jury to do. Was to use Mr. Benton's prior convictions for identity purposes, an issue that was undisputed at trial. No one had any question here that Mr. Benton took the acts that were, in fact, criminal. So the jury had access to this evidence for an irrelevant 404B purpose, possibly, but one that didn't matter. And then it was adequately told over and over not to use the evidence for propensity purposes. And I think this Court can look to its sister courts' decisions in Frazier, that's the Sixth Circuit case we cited, and Henry, that's the First Circuit case we cited. In situations identical to this, where arguably the jury instructions allowed the jury to consider Rule 404B evidence for purposes of identity, when it was undisputed, the Court or the First Circuit said, that's harmless. And then the Third Circuit, the Sixth Circuit said, there's certainly no substantial effect on rights under the plain air standard of review, which, I would remind this Court, is the standard that applies to Mr. Benton's claim here. If anything, this is an easier case than Frazier or Henry. Well, I don't see the word propensity in the charge, and maybe that's a good thing, because I'm not sure the average juror would get any use from that. Your Honor, I certainly agree with you. It would not be a good thing for the government if the instructions said that the jury could use it for propensity. I think what I would specifically reference this Court to are the portions of that Mr. Benton is only on trial for the crimes charged. Mr. Benton is not charged in this case with any offense relating to the offenses detailed in Government's Exhibit 30, which is the stipulation that contained his prior convictions. And you may not use this evidence to conclude that he has a bad character or that Mr. Benton has a criminal personality. The jury is being told all of this on JA-387, and so however else they might have understood the part that potentially troubles some language in this Rule 404-B instruction, they did not understand the district court to have authorized the use of propensity evidence, pure and simple. Any error on this front is harmless and certainly did not affect Mr. Benton's substantial rights under plain-air review. Do you know whether the record shows that the jury asked for any recharge or any notifying instructions? The jury was instructed, the parties gave closing arguments. They then did spend two days deliberating, but I don't think that's particularly surprising in this case, because even if the facts of this case aren't particularly complicated, the law is extremely complicated. FICA and 1519, there were pardoned convictions at issue here. That's a lot for the jury to sit and think about. So even if they — and if anything, I think it reflects that they were very faithfully going through these instructions and doing their best to charge Mr. Benton, to find Mr. Benton guilty based on the instructions that the district court carefully gave. All right. Thank you. Thank you. Mr. Harper, why don't you take two minutes? Thank you, Your Honor. Just a couple of points in rebuttal. I mean, I think it's pretty telling that the government is really not defending the theory upon which it obtained a conviction below before the jury, that Mr. Benton intended to influence an election. It's not really defending the identity instruction that Your Honor was just talking about. It's resting its entire case on plain error review. And I think the errors here were plain, and certainly in combination, they were highly prejudicial to Mr. Benton. Now, specifically on the FICA preservation point, the government said that it would be a new theory of preservation to allow a party to preserve something at the motion-to-dismiss stage for the jury instructions. And, you know, this Court in the United States v. PAPA held exactly that. The defendant there made a First Amendment argument at the motion-to-dismiss stage. The district court rejected it, and then the defendant this Court held did not need to re-raise that at the jury instruction stage. So I think this issue was preserved. If you look at JA-393, the district – I'm sorry, 293, the district court held – I'm sorry, JA-93, the district court held that this element was not – the vast length of the purport was not an element of the offense. As to the limiting instruction, if you look at JA-437, Judge Garcia, this is where the district court recognized that he had made a prior conclusion that this could come in for MO purposes. The government – the government's use of this instruction was also incredibly prejudicial. The government, at closing argument, repeatedly said, this is how Mr. Benton likes to commit his crimes. If you see a pattern, it's indicative of his guilt. This is someone who likes to cover their tracks. That is encouraging propensity reasoning of the most prejudicial kind, and it flowed directly from the district court's decision to – Roney's decision to admit this for identity purposes. And then lastly, on the 1519 point, I think the government can't really deny that there's complete overlap here. Every single willful violation of FICA involving a false report of $2,000 or more is going to be intended to obstruct the administration of the FEC. One of the FEC's core purposes is to ensure that contributions are accurately reported. I don't see any way around that. And if you let the government use Section 1519 in this context, it's going to use it in every single case. It's going to render FICA a nullity. And so we'd ask the Court to reverse or, at a minimum, remand for trial – a new trial on all counts. All right. Mr. Harper, you were – you were appointed by this Court to represent Mr. Benton, and we thank you for your very able assistance. Thank you, Your Honors.
judges: Henderson, Pan, Garcia